IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ROSALIND TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 03-00001-CV-W-HFS |
| ) | |
| TRUMAN MEDICAL CENTER, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

This three-year old discrimination and retaliation case has regrettably been in limbo for more than a year. The initial fault seems entirely attributable to the lackadaisical preparation of plaintiff's counsel. Requests for admissions went unanswered, and thus served as a basis for a summary judgment motion. Rule 26 disclosures were not made early on, as required by the procedural rules. To the extent an adequate disclosure has finally been made, it was after the scheduled close of discovery, after defendant filed its motion for summary judgment, and after repeated calls on plaintiff's counsel to comply with the initial procedural requirements in the case. Apparently plaintiff's deposition has not been taken, although some delay seems to have occurred because of her husband's health. Thereafter defendant was apparently unwilling to continue with discovery and thereby tacitly open proceedings for post-discovery discovery by plaintiff. Defendant's alleged failure to accommodate plaintiff or to push for completion of discovery does not justify opposing counsel's complete disregard of the schedule.

Defendant seeks essentially to close out the case, either by summary judgment or by evidence preclusion that would make it impossible for plaintiff to succeed at trial. Plaintiff urges

that she be allowed to engage in some discovery (depositions with seven named deponents) and counsel asks that "the full ire of this Court" be directed toward him, thus saving plaintiff's case for disposition at some future trial. Doc. 27, filed in July 2004, some eighteen months after suit was filed. This was the first indication of record that counsel was interested in pursuing his case.

Recognizing that sorting out answers to requests for admission would be the first step in determining what trial issues might be posed, I directed responses to the requests, which were thereafter filed. Doc. 35. A conference in April, 2005 was not followed up appropriately. I confess being baffled by the procedural impasse and how to give fair treatment to the interests of the parties and counsel.[1] Although defendants sometimes complain that delays weaken memories it is my supposition that the lost time has been more burdensome to plaintiff, who presumably has been expecting relief or closure.

I regret the undue delay in chambers but reiterate that plaintiff's counsel got us into this mess. The following conclusions are drawn:

1. The late responses to the requests for admissions are permissible under the rules, in the interest of justice, and therefore moot substantial segments of defendant's presentation in favor of summary judgment. Doc. 21.

2. While the seventeen month delay in filing Rule 26 disclosures was clearly "without substantial justification" it has proved to be largely "harmless" and does not justify a total prohibition on presentation of proof by plaintiff. Even if unjustified and harmful, sanctions "in lieu" of preclusion would be authorized. Rule 37(c)(1). Compare Smith v. Tenet Healthsystem SL,

---

[1] Unlike the Kansas case cited by defendant to show counsel's repeated delinquencies, plaintiff here is not shown to be blameworthy. Leaving her with a possible malpractice action would not seem to be a desirable result.

2

Inc., 436 F.3d 879 (8th Cir. 2006). This does not signify that violation of procedural orders and rules do not involve serious risks and sanctions (including preclusion) when appropriate. See Arabian Agriculture Services Co. v. Chief Industries, Inc., 309 F.3d 479 (8th Cir. 2002); Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277 (8th Cir. 1995).

3. Plaintiff's affidavit and other filings apparently leave several issues open to trial, as suggested below, although a single issue will survive renewed summary judgment screening at this time.

4. Apart from the possibility of money sanctions against plaintiff's counsel there is the immediate issue of what if any pretrial preparation shall be permitted. Since discovery was to close more than two years ago, and the only reasonable extension might have been for some weeks because of plaintiff's husband's health, I conclude that this consideration and the need for sanctions means I should severely restrict plaintiff's discovery. It should be narrowly focused on the claim of racial discrimination in salaries.

5. Limited further discovery will of course be allowed to defendant, if needed, including plaintiff's deposition.

6. Some issue preclusion seems appropriate, so as to confine plaintiff to the bare bones of her claims. My reading of the papers suggests the following: Plaintiff says she was paid less than others who held the title of "executive secretary" or "executive assistant" and claims that racial bias was the cause.[2] She also now claims there was a termination in retaliation for a charge of

---

[2]The two persons cited by defendant were allegedly not comparable, because of their job titles. The burden does remain with plaintiff, and she cannot simply rely on her own opinions, self-evaluation and hearsay. Whether comparative salaries of three other "executive secretaries" will make a prima facie case is assumed at this time.

3

compensation discrimination filed in August, 2001 (as opposed to the pleaded date of October, 2001). Defendant's briefing does not deal with this charge, except to say there were good grounds for discharge. Whether antagonism raised by salary complaints or other issues triggered the discharge, or whether the subsequent racial charge was a motivator, could be trial issues in theory. My review of plaintiff's own exhibits convinces me, however, that she cannot get to the jury on a claim of retaliation for filing a complaint asserting racial discrimination in the salary structure.

      7. The retaliation issue requires some close analysis. The filings by plaintiff in opposition to summary judgment, most favorably construed for her, would support a conclusion that during 2001 and until her termination in early 2002, plaintiff incurred the hostility of her immediate supervisor, Marsha Morgan. Defendant claims it was entirely a matter of job performance. This is vulnerable, in light of plaintiff's favorable job reviews in prior years. The records supplied by plaintiff do, however, show the sort of strongly antagonistic personal relations that might reasonably be found to cause a termination. They also indicate that salary complaints and other tensions between plaintiff and Morgan going back at least to March, 2001, underlay the bad feelings.

      As early as April 3, 2001, only a few weeks after her last favorable review, plaintiff recorded serious difficulties with Morgan, where Morgan supposedly said that plaintiff was "stuck with Marsha" but then questioned whether she was "stuck with me." Exh. H, Response to Motion for Summary Judgment (Doc. 27). Plaintiff apparently inferred that early that Morgan was considering severing the employment relationship. Although plaintiff was then pressing hard for "correction" of her salary, she did not treat that as a job issue with Morgan, and was in serious trouble with her

4

supervisor long before she filed a race discrimination complaint about salary.[3] Plaintiff's "recap of August 3, 2001 meeting" with Morgan contains over three pages of closely-written recitation of very serious problems between them, and barely mentions her less favorable salary than that of her "white counterparts". Even if the racial reference is taken out of context and emphasized, it pre-dated the formal complaint or complaints that allegedly triggered retaliation. Exh. E. Response to Motion for Summary Judgment.

Plaintiff's pleaded theory of recovery is that she filed a race discrimination claim with the City in October, 2001 and the charge at that late date was fatal to her job.

Retaliation for a salary complaint based on mistake, miscalculation and the like would not, of course, be illegal even though plaintiff might suppose it would. Plaintiff must make a submissible case that she would have survived the salary dispute and other difficulties with Morgan if she had not accused the administration of <u>racial</u> bias. There is nothing more than impermissible speculation that might support a finding for plaintiff treating the racial complaint in October, or even August, as her undoing.

Whatever the fairness of plaintiff's discharge, a jury could not reasonably attribute it to a race discrimination charge in October, as pleaded. If an amendment of the pleadings were asked (which has not been suggested) the same may be said for the racial inference advanced on August 9, after she had engaged in heated controversy with Morgan.

---

[3]This is also shown by a strongly worded objection to Morgan's supervisory conduct in a filing with the chief executive of defendant dated February 26, 2001. Exh L, Response to Motion for Summary Judgment.

The documented hostility was so clear before racial charges were made so that a jury could not reasonably attribute the discharge to plaintiff's having a lodged a racial complaint in November, or even August. Summary judgment will be granted to defendant on the retaliation issue.

8. The salary structure issue is currently presented by both sides in a sketchy manner. If plaintiff knows her job title, and what it was from 1997, and if the two employees cited by defendant were not comparable in title or in functions, then defendant has not explained a lower salary for plaintiff than for the three executive secretaries who are identified by plaintiff as being white. It is barely hinted that plaintiff's work unit was smaller, and that might justify reduced compensation, but this contention is skeletal, presumably because defendant relies on a theory that plaintiff has not made a prima facie case. That arguably is true, but the record is inadequate for anyone to determine if there is more than smoke in the claim.

We do not know exactly when any disparity began, who was responsible for establishing compensation, whether an alleged mistake in crediting experience was racially tainted, and whether the smaller unit served by plaintiff was the rationale for setting her salary. There also seems to be a confusing history of an independent survey of salaries and adjustment of plaintiff's original salary that apparently was the source of complaint (and may well have triggered the antagonism that resulted in her termination). How much of plaintiff's claim depends upon hearsay is unclear, although defendant's careful silence and attempt to divert consideration to other employees might suggest there were some executive secretaries who were better paid and not members of a racial minority. That may of course be innocent of racial taint, but no analysis is possible at this time.

Summary judgment for defendant on the salary issue would be a stab in the dark. I recognize that defendant could argue plausibly that there are deficiencies in plaintiff's prima facie case. Even

6

at this late date, however, I would not be comfortable in ringing down the curtain on this issue. There is "negative discretion" to deny summary judgment when the record is inconclusive, and I will do so at this stage of development of the record, on the salary discrimination claim. Roberts v. Browning, 610 F.2d 528, 536 (8th Cir. 1979).

9. A trial should be scheduled for January or February. Counsel shall, within ten days, meet and agree on any limited further discovery consistent with this order. In the event of inability to agree they shall promptly report to the court. If defendant wishes to file a second summary judgment motion, in time for ruling in advance of trial, that should be included in a new scheduling order, as should an early date for amended witness and exhibit lists, focused on the salary discrimination issue.

10. Imposition of monetary sanctions against plaintiff's counsel should probably be deferred until the end of the case. At the end of the case defendant may also have a monetary claim against plaintiff, even if she is successful, for any proof required under the denials of admissions that are deemed to have been unreasonably tendered. Rule 37(c)(2), FR Civ Proc.[4]

It is therefore ORDERED that pending motions are denied, except that defendant's motion for summary judgment is reconsidered and is Granted in part and Denied in part, as stated herein. It is further ORDERED that within ten days of this date counsel shall meet and confer and shall propose a new scheduling order consistent with this ruling.

---

[4] Plaintiff may promptly amend her answers to the requests for admissions, thus avoiding such an assessment.

7

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

September 25, 2006

Kansas City, Missouri